**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ryan Robert Baker, | ) | No. CV 12-0140-TUC-BGM |
| | ) | |
| Petitioner, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Charles L. Ryan, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner Ryan Robert Baker, confined in the Arizona State Prison Complex, Tucson, and represented by counsel, has filed a Petition For Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1).  Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer")  (Doc. 11) and Petitioner has filed a Reply (Doc.15).  The parties have consented to Magistrate Judge jurisdiction.  (Doc. 16).  Based on the following discussion, the Petition for A Writ of Habeas Corpus is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Court of Appeals stated the facts[1] as follows:

---

[1]As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007)*;*

1    Just after 2:00 a.m. on June 26, 2007, F. and V. were walking along
2    Stone Avenue, when a vehicle with two men inside pulled alongside them.
     The driver leaned over the passenger and demanded money from them. He
3    then got out of the car and approached them, again demanding money. F. told
     the man they did not have any money, and he and V. began to walk away. The
4    driver got back in the vehicle and followed F. and V. for a time before again
     getting out of the car and approaching them on foot. When the driver
5    demanded money again, V. told him to leave them alone. The driver returned
     to the vehicle to retrieve a bat. He once again demanded money and hit F. in
6    the head with the bat. The driver then got in the car and drove away. F.
     suffered a traumatic brain injury.

7    After receiving no investigative leads, Tucson Police Detective Haynes
     resorted to media publicity in an attempt to acquire additional information
8    about the crime. Within the following ten days, Davonn B. came forward,
     stated that he had been the passenger in the vehicle, and identified Baker as the
9    driver who had assaulted F.

10   Answer (Doc. 11), Ariz. Ct. App. Mem. Decision 5/15/2009, *State v. Ryan Robert Baker*, No.

11   2 CA-CR 2008-0224, (Exh. "H") at ¶¶ 2-3. On August 2, 2007, Petitioner was charged by

12   indictment in Pima County Superior Court with two counts of attempted armed robbery

13   (Counts One and Four) and two counts of aggravated assault (Counts Two and Three).

14   Answer (Doc. 11), Indictment (Exh. "A"). On May 2, 2008, Petitioner was convicted on all

15   charges, that is, as to Counts One through Three regarding the male victim, and as to Count

16   Four regarding the female victim. Answer (Doc. 11), Minute Entry 5/2/2008 (Exh. "B") at

17   3-4. The jury further found as to Counts One and Two that the offense involved the use

18   and/or discharge and/or threatening exhibition of a deadly weapon and/or dangerous

19   instrument, to wit, a bat; as to Count Three that the offense involved the intentional or

20   knowing infliction of serious physical injury; and as to Count Four the offense involved the

21   use and/or discharge and/or threatening exhibition of a deadly weapon, to wit, a bat. *Id.* The

22   jury found as aggravating factors that the male victim suffered severe physical and emotional

23   harm. *Id.* On June 20, 2008, Petitioner was sentenced to aggravated concurrent prison terms

24   of 15 years as to the aggravated assault convictions, a consecutive aggravated term of 15

25   years for the attempted armed robbery conviction regarding the male victim, and to a

26

27   *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose*
28   *v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

1  consecutive presumptive term of 7.5 years for the attempted armed robbery conviction

2  regarding the female victim, resulting in a total aggregate prison sentence of 37.5 years.

3  Answer (Doc. 11), Aggravation/Mitigation Hr'g & Sent. of Imprisonment 6/20/2008 (Exh.

4  "C"); Sent. Tr. 06/20/08 (Doc. 14-8) at 46-47.

5        **A.**    **Direct Appeal**

6        Petitioner appealed and argued that the trial court had erred in refusing to instruct the

7  jury on third-party culpability and in ordering consecutive sentences.  Answer (Doc. 11),

8  Notice of App. (Exh. "D"); Answer (Doc. 11) Appellant's Opening Brief (Op. Br.) (Exh.

9  "E") at 1, 7-36.  The Arizona Court of Appeals affirmed Petitioner's conviction and sentence.

10  *See* Answer (Doc. 11), Exh. "H."  Petitioner timely sought review in the Arizona Supreme

11  Court.  Answer (Doc. 11), Ariz. Ct. App. Order 6/16/2009 (Exh. "I") & Pet. for Review

12  7/20/2009 (Exh. "H").  October 27, 2009, the Arizona Supreme Court denied review.

13  Answer (Doc. 11) Order 10/28/2009, *State v. Ryan Robert Baker*, No. CR-09-0187-PR (Exh.

14  "J").

15        **B.**    **Post-Conviction Relief Proceeding**

16        While his petition for review was pending, Petitioner filed a Notice of Post-

17  Conviction Relief (PCR notice) under Arizona Rules of Criminal Procedure 32.9 on October

18  30, 2009.  Answer (Doc. 11), Notice of PCR Relief (Exh. "L").  Petitioner, represented by

19  counsel, timely filed his PCR petition on April 28, 2010.  Answer (Doc. 11), Notice

20  12/8/2009 (Exh. "M"), Orders (Exh. "N") & Petition for PCR (Exh. "O").  Petitioner alleged

21  that trial counsel had provided ineffective assistance by failing to ascertain whether a crime

22  award program had been initiated and was known to the State at the time prosecution witness

23  Davonn Banks testified at the criminal trial.  Answer (Doc. 11), Exh. "O."  The trial court

24  found no merit to the claim and denied relief without an evidentiary hearing.  Answer (Doc.

25  11), Ruling Re: Pet. for PCR 7/9/2010 (Exh. "R").  On July 26, 2010, Petitioner sought

26  review in the Arizona Court of Appeals.  Answer (Doc. 11), Pet. for Review to Ariz. Ct. App.

27  (Exh. "S").  The court of appeals granted review, but denied relief.  Ariz. Ct. App. Mem.

28  Decision 10/4/2010, *State v. Ryan Robert Baker*, No. 2 CA-CR 2010-0250-PR (Exh. "T")

(Doc. 12).  Although Petitioner requested and received extensions of time to file for review in the Arizona Supreme Court, he did not file a petition for review in that forum.  Ariz. Ct. App. Orders (Exh. "U") (Doc. 12).  The state court of appeals mandate issued on March 23, 2011.  Ariz. Ct. App. Mandate (Doc. 4-4).

### C.    The Instant Habeas Proceeding

Petitioner filed his federal habeas petition on February 27, 2012.  Petition (Doc. 1).  Petitioner asserts the following grounds for relief:

(1)    Ground One:  Petitioner was denied his Fifth and Fourteenth Amendment due process rights to a fair trial when the trial court failed to give a "third party culpability" jury instruction.

(2)    Ground Two:  Arizona's procedure for determining Petitioner's eligibility for consecutive sentences as to Counts One through Three violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights to (a) due process, (b) double jeopardy, and (c) a jury determination of the facts necessary to increase Petitioner's sentence beyond the statutory maximum.

(3)    Ground Three:  Petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to move for a new trial based on information disclosed at sentencing that the State's key witness received a $1,000 award for his testimony.  (Doc. 1 at 7).

## II.    STANDARD OF REVIEW

### A.    In General

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigen*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S.

362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905

(9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that there was an

error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10

(quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786-87) (alterations in original).

### B.    *Exhaustion of State Remedies*

Prior to application for a writ of habeas corpus, a person in state custody must exhaust

all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides

a simple and clear instruction to potential litigants: before you bring any claims to federal

court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509,

520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives

the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal

rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004)

(internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed

to protect the state courts' role in the enforcement of federal law and prevent disruption of

state judicial proceedings." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal

citations omitted). This upholds the doctrine of comity which "teaches that one court should

defer action on causes properly within its jurisdiction until the courts of another sovereignty

with concurrent powers, and already cognizant of the litigation, have had an opportunity to

pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590,

94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as

the applicant "has the right under the law of the State to raise, by any available procedure the

question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly

presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404

U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The fair presentation requirement

mandates that a state prisoner must alert the state court "to the presence of a federal claim"

in his petition, simply labeling a claim "federal" or expecting the state court to read beyond

the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, §23.3b (4th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.    *Procedural Default*

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the

federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at 2554. This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted). Such claims are considered procedurally barred from review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991))).

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (emphasis in original).

1    The State retains the burden to prove the adequacy of the bar.  Once the State raises

2    procedural default as an affirmative defense, "the burden to place that defense in issue shifts

3    to the petitioner." *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  "The petitioner

4    may satisfy this burden by asserting specific factual allegations that demonstrate the

5    inadequacy of the state procedure, including citation to authority demonstrating inconsistent

6    application of the rule." *Id.*

7    Where a habeas petitioner's claims have been procedurally defaulted, the federal

8    courts are prohibited from subsequent review unless the petitioner can show cause and actual

9    prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d

10   334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal

11   habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*,

12   477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal

13   habeas court must evaluate appellate defaults under the same standards that apply when a

14   defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural

15   default must ordinarily turn on whether the prisoner can show that some objective factor

16   external to the defense impeded counsel's efforts to comply with the State's procedural rule."

17   *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also*

18   *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any

19   cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such]

20   there is no basis on which to address the merits of his claims.").  In addition to cause, a

21   habeas petitioner must show actual prejudice, meaning that he "must show not merely that

22   the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and

23   substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

24   *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations

25   omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot

26   overcome the procedural default and gain review by the federal courts.  *Id.*, 106 S.Ct. at

27   2649.

28

1   The Supreme Court has recognized, however, that "the cause and prejudice standard
2   will be met in those cases where review of a state prisoner's claim is necessary to correct 'a
3   fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546,
4   115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac* 456 U.S. 107, 135, 102 S.Ct. 1558, 1572-73,
5   71 L.Ed.2d 783 (1982)).   "The fundamental miscarriage of justice exception is available
6   'only where the prisoner *supplements* his constitutional claim with a colorable showing of
7   factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d
8   203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct.
9   2616, 2627, 91 L.Ed.2d 364 (1986)).   Thus, "'actual innocence' is not itself a constitutional
10  claim, but instead a gateway through which a habeas petitioner must pass to have his
11  otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404,
12  113 S.Ct. at 862.   Further, in order to demonstrate a fundamental miscarriage of justice, a
13  habeas petitioner must "establish by clear and convincing evidence that but for the
14  constitutional error, no reasonable factfinder would have found [him] guilty of the underlying
15  offense." 28 U.S.C. § 2254(e)(2)(B).

16  In Arizona, a petitioner's claim may be procedurally defaulted where he has waived
17  his right to present his claim to the state court "at trial, on appeal or in any previous collateral
18  proceeding." Ariz. R. Crim. P. 32.2(a)(3).   "If an asserted claim is of sufficient constitutional
19  magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently'
20  waived the claim." *Id.*, 2002 cmt.   Neither Rule 32.2 nor the Arizona Supreme Court has
21  defined claims of "sufficient constitutional magnitude" requiring personal knowledge before
22  waiver.   *See id.*; *See also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).   The Ninth
23  Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the
24  "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at
25  622.

26  . . .
27  . . .
28  . . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   STATUTE OF LIMITATIONS

### A.   *Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitations. *See White v. Klitzkie*, 281 F.3d 920, 921-22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). Additionally, "the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [90-day] period within which a petitioner can file a petition for writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents contend Petitioner's federal habeas petition is time barred. Answer (Doc. 11) at 3-5. Petitioner did not seek certiorari review in the United States Supreme Court resulting in the conclusion of his direct appeal 90 days after the state supreme court denied review on October 27, 2009. Petitioner's direct review of his conviction thus concluded on January 25, 2010. AEDPA's one-year limitations period began

1   to run on January 26, 2010 except that Petitioner filed a PCR notice on October 30, 2009.

2   Answer (Doc. 11), Exh. "L."

3        **B.**    ***Statutory Tolling of the Limitations Period***

4        The limitations period is tolled during the time in "which a properly filed application

5   for State post-conviction or other collateral review with respect to the pertinent judgment or

6   claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 552 U.S. 3, 4, 128 S.Ct. 2, 3,

7   169 L.Ed.2d 329 (2007). An application for State post-conviction relief is "'properly filed'

8   when its deliver and acceptance are in compliance with the applicable laws and rules

9   governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213

10   (2000). Moreover, if a state court rejects a petitioner's PCR petition as untimely, it cannot

11   be "properly filed" and the petitioner is not entitled to statutory tolling. *Pace v.*

12   *DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). "[I]n

13   Arizona, post-conviction 'proceedings begin with the filing of the Notice.'" *Hemmerle*, 495

14   F.3d 1069, 1074 (9th Cir. 2007) (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d

15   1054 (9th Cir. 2004)). Petitioner filed his Notice of Post-Conviction Relief on October 30,

16   2009. Answer (Doc. 11), Exh. "I." This PCR notice was "properly filed," and therefore

17   tolled AEDPA's one-year statute of limitations. *Hemmerle*, 495 F.3d at 1074.

18        Petitioner's request for review of the state trial court's denial of his PCR petition was

19   granted and relief denied by the Arizona Court of Appeals on November 4, 2010. Respts.'

20   Exh. "T" (Doc. 12). Had Petitioner sought review of that decision in the Arizona Supreme

21   Court, his "pending" state post-conviction matter would have concluded on the date review

22   was denied, not the date the state supreme court issued its mandate. *White v. Klitzkie*, 281

23   F.3d 920, 923 n. 4 (9th Cir. 2002) (date review is denied, not date the mandate is issued, is

24   relevant for AEDPA time calculations); *Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir.

25   2007) (after the Arizona Supreme Court denied review of petitioner's Rule 32 application,

26   "nothing remained 'pending' for purposes of § 2244(d)(2); . . . the statute of limitations set

27   forth in § 2244(d)(2) began running again"). However, Petitioner did not file for review in

28   the Arizona Supreme Court. Under such circumstances, Petitioner's state post-conviction

1   matter was no longer pending as of the date the Arizona Court of Appeals issued its mandate

2   regarding its grant of review but denial of relief as to Petitioner's request for review of the

3   trial court's denial of his PCR petition.  *See Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1054-

4   55 (D. Ariz. 2010), *aff'd* 497 Fed. Appx. 744, 2012 WL 5505736 (9th Cir. Nov. 14, 2012),

5   *cert. denied*,  133 S.Ct. 1824 (U.S. Apr. 15, 2013) (Under Arizona law, an "appellate court

6   decision is not final until the mandate issues" if no further review is sought).  The state court

7   of appeals mandate issued on March 23, 2011, and the tolling period in state court ceased on

8   that date.  Ariz. Ct. App. Mandate (Doc. 4-4).  Petitioner therefore had one year from March

9   23, 2011 to file his federal habeas petition.  As Petitioner filed his habeas petition on

10  February 27, 2012, his petition was timely filed.

11

12  **IV.    ANALYSIS**

13      ***A.       Ground One: Third Party Culpability Jury Instruction***

14          Petitioner asserts that he was denied his Fifth and Fourteenth Amendment due process

15  rights to a fair trial when the trial court failed to give a "third party culpability" jury

16  instruction.  Respondents argue that Ground One is technically exhausted, but procedurally

17  defaulted because Petitioner's one line reference to "due process" in his appellate brief was

18  insufficient to present the claim to the state court.  Answer (Doc. 11) at 9-10.

19          With respect to Ground One and the trial court's failure to give a third party

20  culpability instruction, Petitioner raised this issue on direct appeal based on state case law.

21  Answer (Doc. 11), Exh. "E" at 7-18.  Petitioner's argument contained only the single passing

22  assertion that "the judge violated Baker's state and federal constitutional due process and fair

23  trial rights.  U.S. Const. Amends. 5 and 14; Ariz. Const. Art. 2, § 4." (*Id*. at 15).  Petitioner's

24  Reply brief similarly relied on a discussion of state case law without reference to federal

25  precedent.  Answer (Doc. 11), Appellant's Reply Br. (Exh. "G") at 1-7.  The state court of

26  appeals rejected Petitioner's argument based on a discussion of state case law.  Answer (Doc.

27  11), Exh. "H" at 3-7.  The court of appeals made no finding regarding a violation of

28  constitutional due process.  Petitioner did not sufficiently alert the state court that he was

raising a federal constitutional violation. Petitioner therefore did not "fairly present" the jury instruction issue as a federal constitutional claim to the state appellate court.

Any return to state court by Petitioner, with respect to Ground One, would be "futile." Petitioner would no longer have a remedy if he returned to the state court. The time has passed to seek post-conviction relief in state court under Ariz.R.Crim.P. 32.4(a) and Petitioner has not shown any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him. Petitioner's Ground One claim is procedurally defaulted.

Where issues are procedurally defaulted, federal review of the claim is barred unless the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." Petitioner does not argue any of these grounds in his Reply. Petitioner has not established "cause" for the procedural default or resulting prejudice. He does not contend he is actually innocent and has not shown a miscarriage of justice. As such, Ground One is denied and dismissed as procedurally defaulted.

### B.   *Ground Two: Due Process, Double Jeopardy, and Jury Determination Regarding Facts for Sentencing*

Petitioner asserts that Arizona's procedure for determining Petitioner's eligibility for consecutive sentences as to Counts One through Three violated his Fifth, Sixth and Fourteenth Amendment rights to (a) due process, (b) double jeopardy, and (c) a jury determination of the facts necessary to increase Petitioner's sentence beyond the statutory maximum. Respondents contend that subclaim (a) is abandoned as not raised in Petitioner's federal habeas petition and that subclaims (b) and (c) are procedurally defaulted because Petitioner did not assert them in the state court in a procedurally appropriate manner. Answer (Doc. 11) at 10-14.

### 1. Direct Appeal

On direct appeal, Petitioner argued that the trial court's imposition of consecutive sentences violated his "state and federal constitutional due process and double jeopardy rights." Answer (Doc. 11) Exh. "E" at 18-36. Petitioner supported this argument with references to United States Supreme Court precedent and Arizona statutory and case law.

1   *Id*. He further argued that A.R.S. § 13-116 provided him with "a substantive liberty interest

2   and rights under the state and federal double jeopardy clauses in receiving concurrent

3   sentences for offenses arising from the same act," relying in part on *Whalen v. United States*,

4   445 U.S. 684, 688 (1980).  *Id*. at 21, 23.[2]

5       The Arizona Court of Appeals considered and rejected Petitioner's due process

6   argument, finding that it essentially was a "critique of [*State v. Gordon*, 778 P.2d 1204 (Ariz.

7   1989)], and what [Petitioner] view[ed] as its shortcomings."  Answer (Doc. 11), Exh. "H"

8   at 11-13).[3] It distinguished *Mathews v. Eldridge,* 424 U.S. 319 (1976), which involved civil

9   administrative proceedings, based on *State v. Wagner*, 982 P.2d 270, 273 (Ariz. 1999), which

10  held "that 'the balancing test set forth in *Mathews* does not provide the correct standard to

11  evaluate constitutional challenges to criminal sentencing procedures.'"  *Id*. at 12.   It

12  concluded that "Baker has not persuaded us that the current procedure, whereby a defendant

13  is given an opportunity at the sentencing hearing to argue whether he is entitled to concurrent

14  prison terms and an evaluation by a sentencing judge of the propriety of consecutive

15  sentences based on *Gordon*, fails to provide 'a fair sentencing procedure.'  *See State v. Grier*,

16  146 Ariz. 511, 515, 707 P.2d 309, 313 (1985)."  *Id*.  The court of appeals did not consider

17  Petitioner's double jeopardy argument, finding that it was abandoned as not raised in the trial

18  court and that the issue was not developed on appeal separately from Petitioner's discussion

19  of § 13-116 or supported by authority on the merits.  *Id*. at 7, n. 1.

20                              **2.  Due Process**

21      In his federal habeas petition, Petitioner alleges in subclaims (a) and (b) that Arizona's

22  procedure for determining his eligibility for consecutive sentences violated his Fifth, Sixth

23

24      [2] Arizona Revised Statutes, § 13-116 provides in part that  "An act or omission which

25  is made punishable in different ways by different sections of the laws may be punished under

26  both, but in no event may sentences be other than concurrent."

27      [3] *Gordon* sets forth the test for determining under A.R.S. § 13-116 whether a

28  defendant's criminal conduct constitutes a single act requiring concurrent sentences.
    *Gordon*, 778 P.2d at 1210-11.

and Fourteenth Amendment rights to due process and double jeopardy.  Petition (Doc. 1) at 20.  Petitioner's argument in Ground Two mentions double jeopardy grounds but not due process grounds.  *Id*. at 20-24.  Accordingly, although Petitioner fairly presented a due process claim to the state appellate court that was considered and determined on appeal, he has now abandoned any separate claim for federal habeas relief based on a violation of due process by failing to include the issue in the argument portion of his federal habeas petition. Petitioner appears to concede the issue because he makes no mention of a violation of due process claim in his Reply.  Reply (Doc. 15) at 11-18.  As such, Petitioner's due process claim asserted as subclaim (a) of Ground Two is foreclosed.

### 3.  Double Jeopardy

With respect to the double jeopardy claim asserted in Petitioner's habeas petition, the Arizona Court of Appeals specifically found that he abandoned and waived the claim because he failed to assert it in the trial court  and because he had not sufficiently argued the issue on appeal, in violation of Arizona Rule of Criminal Procedure 31.13(c)(1)(vi).  Rule 31.13(c)(1)(vi) provides that the appellant's opening brief "shall contain the contentions of the appellant ... and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."  Application of Rule 31.13(c)(1)(vi) is firmly established and regularly followed in Arizona.  *See State v. Carver*, 771 P.2d 1382, 1390 (Ariz. App. 1989); *State v. Lopez*, 175 P.3d 682, 687 n. 5 (Ariz. App. 2008) (declining to address defendant's argument that did not comply with Rule 31.13(c)(1)(vi)); *State v. Burdick*, 125 P.3d 1039, 1042 n. 4 (Ariz. App. 2005); *State v. Eddington*, 244 P.3d 76, 85 (Ariz. App. 2010); *see also Bersane v. Ryan*, No. CV 07-8085-PCT-PGR (HCE), 2010 WL 1195162, at *23 (D. Ariz. Jan. 21, 2010) (where state appellate court declined to address double jeopardy claim for failure to comply with Rule 31.13(c)(1)(vi), such determination is independent of federal law).  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 728, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).  This is true whether the state law basis is substantive

or procedural. *Id.* (citations omitted).  Accordingly, the state appellate court's application of its procedural rules, which has nothing to do with a federal constitutional question, is an independent and adequate state ground determination that prohibits federal review of the claim.  *See Brown v. Ryan*, No. CV-09-2625-PHX-GMS (LOA), 2010 WL 2491460, at *7 (D. Ariz. May 24, 2010) (habeas petitioner's state and federal double jeopardy claims procedurally defaulted by virtue of state court's application of a procedural bar when petitioner attempted to raise the claims in state court).

Petitioner argues in his Reply that under Arizona law the failure to argue double jeopardy in the trial court does not waive the issue, citing Arizona cases.  Reply (Doc. 15) at 11-12.  He further argues that the single sentence in his state appellate brief that supported his double jeopardy argument was sufficient to alert the state court of the federal claim and that the state court of appeals erred in finding the claim abandoned.  *Id.* at 13-14.  Petitioner, however, has not provided sufficient argument demonstrating that the state court of appeals relied on a procedural rule in error or that its interpretation was "'clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state'" of federal constitutional rights.  *Compare Sivak v. Hardison*, 658 F.3d 898, 906–07 (9th Cir.2011) ("[A]n erroneously applied procedural rule does not bar federal habeas review"), with *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir.1997) (quoting *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.1982)) (a federal court must respect a state court's interpretation of state procedural law unless that interpretation is "'clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution'").  Petitioner's double jeopardy claim is procedurally barred.

### 4.  Jury Determination of Facts for Sentencing

Respondents further argue that Petitioner did not "fairly present" subclaim (c) of Ground Two asserting that he was entitled to a jury determination of the facts that made him eligible for consecutive sentences under Arizona law.  Answer (Doc. 11) at 13.  Respondents contend that Petitioner did not cite in his opening state appellate brief *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and made only passing reference to *Blakely v. Washington*, 542

1    U.S. 296 (2004), in the context of seemingly acknowledging that *Blakely* does not apply to

2    the imposition of consecutive sentences.  *Id*. at 14, referring to Exh. "E" at 24-25.

3    Petitioner asserted in his state appellate brief as part of his improper sentencing

4    argument that, "The law does not provide an original fact-finder."  Answer (Doc. 11), Exh.

5    "E" at 24.  In support of this issue, Petitioner argued that Arizona law presumably allows for

6    the trial court to make the findings relevant to imposing consecutive sentences but that this

7    assumption is not supported by Arizona statute or case law.  *Id*. at 24.  Petitioner next noted

8    in his brief that "[w]hile, in general, the federal constitution's due process clauses require

9    jury findings of facts that increase the available punishment, [citing *Blakely v. Washington*],

10   nothing in the law prohibits jury findings of facts that lack this feature."  *Id*. at 24.  Petitioner

11   concluded this portion of his argument by asserting that "Arizona law leaves undetermined

12   who the fact-finder is" regarding the decision to impose consecutive sentences and that "[a]

13   basic component of procedural due process is a meaningful opportunity to be heard.

14   *Mathews*, 424 U.S. at 333-34."  *Id*. at 25.  In subsequent sections of his argument, Petitioner

15   contended that Arizona law left undetermined what fact must be found and who has the

16   burden of establishing that fact; Arizona law does not provide for the standard of proof

17   applicable to factual determinations; and the standard for appellate review is problematic, all

18   of which violate due process.  *Id*. at 26-34. The state court of appeals did not address a jury

19   fact-finding issue based on *Apprendi* and *Blakely* in affirming Petitioner's sentence.  Answer

20   (Doc. 11), Exh. "H."

21   Petitioner contends in his Reply that he raised this claim on direct appeal.  Reply

22   (Doc. 15) at 14-15.   Petitioner supports this contention by characterizing his claim as a

23   "*Blakely* argument" but relies exclusively on Arizona authority he contends demonstrates

24   "unique conditions in Arizona."  *Id*.   Based on this Court's review of the state court

25   proceedings, Petitioner did not argue on appeal the claim he now raises in his federal habeas

26   petition based on *Apprendi* and *Blakely* that the jury must be the fact-finder for purposes of

27   determining imposition of consecutive sentences.  Petitioner therefore failed to "fairly

28   present" subclaim (c)  of Ground Two in the state court.

### **5.  Procedural Default of Ground Two Claims**

Ground Two, subclaim (a), is dismissed as foreclosed from habeas review because it was not argued in Petitioner's federal habeas petition.  With respect to Ground Two, subclaims (b) and (c), any return to state court by Petitioner would be "futile."  Petitioner would no longer have a remedy if he returned to the state court.  The time has passed to seek post-conviction relief in state court under Ariz.R.Crim.P. 32.4(a) and Petitioner has not shown any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him.  Petitioner's Ground Two, subclaims (b) and  (c), are procedurally defaulted.

Where issues are procedurally defaulted, federal review of the claim is not barred if the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." Petitioner does not argue any of these grounds in his Reply. Petitioner has not established "cause" for the procedural default or resulting prejudice. He does not contend he is actually innocent and has not shown a miscarriage of justice.  Ground One and Ground Two, subclaims (b) and (c), are denied and dismissed as procedurally defaulted.

### *C.      Ground Three: Ineffective Assistance of Counsel*

Petitioner asserts in Ground Three that defense counsel was ineffective in failing to move for a new trial when its was disclosed at sentencing that a State's key witness received a $1,000 reward for his testimony.  Petition (Doc. 1) at 25.  Petitioner contends that had counsel been aware of this circumstance, counsel could have moved for a new trial based on newly discovered impeachment evidence and requested an evidentiary hearing. *Id*. at 26-27. Petitioner requests an evidentiary hearing on this claim. *Id*. at 28.

For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, Petitioner must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  Second, Petitioner must show that

this performance prejudiced his defense. *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788 (citations omitted). Judging counsel's performance must be made without the influence of hindsight. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington v. Richter*, 131 U.S. 86 , 105 , 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011)) (alterations in original). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 131 U.S. at 104, 131 S.Ct. at 787 (citations omitted). Accordingly, "[w]e apply the doubly deferential standard to

1   review the state court's 'last reasoned decision.'" *Vega v. Ryan*, 757 F.3d 960, 966 (9th Cir.

2   2014) (citations omitted). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated

3   on the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)."

4   *Harrington*, 131 U.S. at 98, 131 S.Ct. at 784. As such, Petitioner also bears the burden of

5   showing the state court applied *Strickland* to the facts of his case in an objectively

6   unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

7       During sentencing, defense counsel reported that she had learned the previous day that

8   State's witness Banks had received a $1,000 reward from a crime reporting hotline. Sent.

9   Tr. 06/20/08 (Doc. 14-8) at 28-29. Counsel expressed concern about whether Banks knew

10  of the reward when he testified. *Id*. The prosecutor responded that it was his understanding

11  based on information from Detective Haynes that the award had just occurred and Banks had

12  not known of its possibility when he testified at trial. *Id*. at 44-45.

13      Petitioner raised this claim in his PCR petition filed in the trial court, submitting in

14  support the affidavit of a private investigator that discussed the 88-Crime's procedures.

15  Answer (Doc. 11) Exh. "O," Godoy Aff, (Att. "1"). The State filed a response that included

16  a Memorandum dated May 15, 2008 sent by Detective Haynes to the director of the crime-

17  reporting hotline inquiring about Banks' eligibility for a reward for his trial testimony.

18  Answer (Doc. 11), Exh. "P," Att. "A." The State also submitted Detective Haynes' affidavit

19  dated June 10, 2010 avowing that he had not discussed the possibility of the reward with

20  Banks or the prosecutor at any time before the jury's verdict and that he submitted the

21  Memorandum after the jury's verdict. Answer (Doc. 11), Exh. "P", Att. "B." The trial court

22  found that information about the award did not exist until after the jury had rendered its

23  verdict and that "Banks did not know that he was being considered for the award when he

24  testified." Answer (Doc. 11) Exh. "R." The court further found that "[t]here was nothing

25  for defense counsel to pursue once the facts behind the 88-Crime award were determined."

26  *Id*. Petitioner's request for review was granted by the state court of appeals who agreed with

27  the trial court's determination and denied relief. Respts.' Exh. "T" (Doc. 12).

28

1  Defense counsel has a "duty to make reasonable investigations or to make a
2  reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S.
3  at 691. Counsel must, "at a minimum, conduct a reasonable investigation enabling him to
4  make informed decisions about how best to represent his client." *Hendricks v. Calderon*, 70
5  F.3d 1032, 1036 (9th Cir.1995) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th
6  Cir.1994) (internal citation and quotations omitted)).

7  Defense counsel was not deficient for failing to investigate the issue of Banks'
8  knowledge of the possibility of the reward. Petitioner has not pointed to any circumstances
9  that casts doubt on the prosecutor's statement at sentencing that Banks did not know of the
10  possibility of the reward. Petitioner did not provide any information during the state post-
11  conviction proceedings showing that there was reason to believe that Banks had some
12  expectation of receiving the reward before he testified. The evidence in the record, which
13  includes the police detective's sworn affidavit, shows that Banks did not know of the
14  possibility of the reward when he testified.

15  During trial, Banks testified that he first called Crime Stoppers and then the police to
16  provide information about the assault. Banks specifically asked the authorities if they would
17  get his girlfriend out of jail. Hr'g Tr. 4/30/08 (Doc. 13) 165-67, 185-87. Banks told the
18  police what he knew about the crime even though the police said they could not help his
19  girlfriend. *Id*. at 166-67. Banks at the time of Petitioner's trial had been charged with a
20  criminal offense and testified that the prosecutor told him that if he provided truthful
21  testimony that information  would be reported to the prosecutor and sentencing judge in
22  Banks' case. *Id*. at 167-68, 210-11. Banks testified at trial that he had not received a plea
23  deal or anything in exchange for his testimony and he was not charged with the assault. *Id*.
24  at 169, 199. He also testified that he was upset with Petitioner because Banks' girlfriend had
25  been arrested regarding damage to a motel room that he felt was Petitioner's fault. *Id*. at 173-
26  77. Banks had asked Petitioner to put up his car for collateral to get his girlfriend out of jail.
27  *Id*. at 173-74, 177-78. Evidence relevant to Banks' motivation for testifying or any reward
28  for his testimony was before the jury.

1    Review of § 2254(d) claims "is limited to the record that was before the state court

2    that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

3    Petitioner's claim of ineffective assistance of counsel was adjudicated on the merits by the

4    state court.  Where, as here, "the record refutes the [habeas] applicant's factual allegations

5    or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

6    hearing." *Schriro v. Landrigan*, 550 U.S. 465,  474 (2007) (a hearing is not required if the

7    allegations would not entitle the petitioner to relief under § 2254(d)).

8    Petitioner has not demonstrated that defense counsel was deficient in failing to

9    investigate the issue of the reward after learning about it at the sentencing hearing.  The state

10   court's determination that defense counsel did not provide ineffective representation was not

11   objectively unreasonable.  Petitioner is not entitled to an evidentiary hearing on this claim.

12

13   **V.     CONCLUSION**

14   For the reasons delineated above, IT IS HEREBY ORDERED that:

15   1)  Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

16   (Doc. 1) is DENIED;

17   2) A certificate of appealability is DENIED, because reasonable jurists would not find

18   the Court's ruling debatable.  *See* 28 U.S.C. § 2253;

19   3)  This matter is DISMISSED with prejudice; and

20   4)  The Clerk of the Court shall close its file in this matter.

21   DATED this 5th day of March, 2015.

22

23   _____

24   Bruce G. Macdonald
     United States Magistrate Judge

25

26

27

28